# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

AJ RUIZ CONSULTORIA EMPRESARIAL
S.A., solely as Judicial Administrator and
foreign representative of SCHAHIN HOLDING
S/A; AGROPECUÁRIA ALTO DO TURIASSÚ
LTDA; AGROPECUÁRIA MARANHENSE
S/A; ÂMBAR EMPREENDIMENTOS E
PARTICIPAÇÕES S/C LTDA; AQUÁTICA
COMUNICAÇÕES LTDA; BASE
ENGENHARIA E SERVIÇOS DE PETRÓLEO
E GÁS S/A; BASE PETRÓLEO E GAS S/A;
COMPANHIA MS DE PARTICIPAÇÕES;
COMPANHIA SCHAHIN DE ATIVOS;
COMPANHIA SCHAHIN SECURITIZADORA
DE CRÉDITOS FINANCEIROS S/S LTDA;
CONSTRUTORA MOGNO LTDA; DEEP
BLACK DRILLING LLP; FOXBOROUGH
PARTICIPAÇÕES LTDA; HABITÉCNICA
PARTICIPAÇÕES S/A; HABITÉCNICA S/A
EMPREENDIMENTOS IMOBILIÁRIOS,
ADMINISTRAÇÃO E PLANEJAMENTO;
HBF PARTICIPAÇÕES LTDA; HHS
PARTICIPAÇÕES S/A; INTELIS
AUTOMAÇÃO E CONTROLE LTDA; MTS
PARTICIPAÇÕES LTDA; S&S HOLDING
ELÉTRICA S/A; S2 PARTICIPAÇÕES LTDA;
SATASCH PARTICIPAÇÕES LTDA; SCH 14
SONDAS DE PRODUÇÕES MARÍTIMAS
S/A; SCH07 PARTICIPAÇÕES LTDA; SCH08
PARTICIPAÇÕES LTDA; SCH13
PARTICIPAÇÕES LTDA; SCH15
PARTICIPAÇÕES LTDA; SCHAHIN
ADMINISTRAÇÃO E INFORMÁTICA LTDA;
SCHAHIN ATIVOS COMPANHIA SCHAHIN
SECURITIZADORA DE CRÉDITOS
FINANCEIROS S/A; SCHAHIN CAPITAL
SPE 1 S/A; SCHAHIN CAPITAL SPE 2 S/A;
SCHAHIN DESENOLVIMENTO
IMOBILIÁRIO S/A; SCHAHIN
EMPREENDIMENTOS IMOBILIÁRIOS
LTDA; SCHAHIN ENERGIA S/A; SCHAHIN
PARTICIPAÇÕES LTDA; SCHAHIN

Case No. 21-cv-6018

**COMPLAINT**

JURY TRIAL DEMANDED

SECURITIZADORA DE CRÉDITOS FINANCEIROS S/A; and SM PARTICIPAÇÕES S/A,

                    Plaintiff,

      v.

BANCO BILBAO VIZCAYA ARGENTARIA, S.A.; BANCO BILBAO VIZCAYA ARGENTARIA, S.A., GRAND CAYMAN BRANCH; CATERPILLAR FINANCIAL SERVICES CORPORATION; CRÉDIT INDUSTRIEL ET COMMERCIAL; DEUTSCHE BANK AG, LONDON BRANCH; DEUTSCHE BANK TRUST COMPANY AMERICAS; HAMBURG COMMERCIAL BANK AG; INTESA SANPAOLO, S.P.A., NEW YORK BRANCH; ITAU BBA INTERNATIONAL PLC; MITSUBISHI CORPORATION; MITSUBISHI UFJ LEASE & FINANCE (U.S.A.) INC.; MIZUHO BANK, LTD.; MS DRILLSHIP I S.A.; NOMURA CORPORATE FUNDING AMERICAS, LLC; SHINHAN BANK; STANDARD CHARTERED BANK; and UNICREDIT BANK AG,

                    Defendants.

Plaintiff AJ Ruiz Consultoria Empresarial S.A., solely as Judicial Administrator and foreign representative of Schahin Holding S/A; Agropecuária Alto Do Turiassú Ltda; Agropecuária Maranhense S/A; Âmbar Empreendimentos E Participações S/C Ltda; Aquática Comunicações Ltda; Base Engenharia E Serviços De Petróleo E Gás S/A; Base Petróleo E Gas S/A; Companhia Ms De Participações; Companhia Schahin De Ativos; Companhia Schahin Securitizadora De Créditos Financeiros S/S Ltda; Construtora Mogno Ltda; Deep Black Drilling LLP; Foxborough Participações Ltda; Habitécnica Participações S/A; Habitécnica S/A Empreendimentos Imobiliários, Administração E Planejamento; HBF Participações Ltda; HHS

2

Participações S/A; Intelis Automação E Controle Ltda; MTS Participações Ltda; S&S Holding Elétrica S/A; S2 Participações Ltda; Satasch Participações Ltda; SCH 14 Sondas De Produções Marítimas S/A; SCH07 Participações Ltda; SCH08 Participações Ltda; SCH13 Participações Ltda; SCH15 Participações Ltda; Schahin Administração E Informática Ltda; Schahin Ativos Companhia Schahin Securitizadora De Créditos Financeiros S/A; Schahin Capital SPE 1 S/A; Schahin Capital SPE 2 S/A; Schahin Desenvolvimento Imobiliário S/A; Schahin Empreendimentos Imobiliários Ltda; Schahin Energia S/A; Schahin Participações Ltda; Schahin Securitizadora De Créditos Financeiros S/A; and SM Participações S/A (collectively, creditors of the "Schahin Group" or "Group"), brings this suit on behalf of and for the benefit of creditors of the estate against Defendants Banco Bilbao Vizcaya Argentaria, S.A.; Banco Bilbao Vizcaya Argentaria, S.A., Grand Cayman Branch; Caterpillar Financial Services Corporation; Crédit Industriel et Commercial; Deutsche Bank AG, London Branch; Deutsche Bank Trust Company Americas; Hamburg Commercial Bank AG; Intesa Sanpaolo, S.p.A., New York Branch; Itau BBA International plc; Mitsubishi Corporation; Mitsubishi UFJ Lease & Finance (U.S.A.) Inc.; Mizuho Bank, Ltd.; MS Drillship I S.A.; Nomura Corporate Funding Americas, LLC; Shinhan Bank; Standard Chartered Bank; and UniCredit Bank AG, stating as follows:

## NATURE OF THE CASE

1.      Plaintiff brings a claim for unjust enrichment on behalf of thousands of creditors of the Schahin Group – a Brazilian oil and gas conglomerate with subsidiaries around the world, including in the United States – to recover more than $465 million that Defendants unlawfully obtained at those creditors' expense.

2.      Defendants were creditors of the Schahin Group as well, having loaned several Schahin Group subsidiaries capital between 2007 and 2009 to build two large semi-submersible

oil drilling rigs, the *Amazonia* and *Pantanal*.  Those rigs were critical to the Schahin Group's operations.

3.      By 2013 and 2014, the Schahin Group was struggling financially.  A court in this District even held five of its entities in contempt when they failed to pay some $60 million an arbitral panel had awarded to the companies that built the *Amazonia* and *Pantanal*.

4.      In September 2014, with the Schahin Group in financial distress, Defendants participated in a complex sale-leaseback transaction in which the Schahin Group sold the two rigs to a Chinese bank, which immediately leased them back to the Schahin Group.  The bulk of the sale proceeds were then distributed to Defendants and other financiers of the rigs as repayment of their loans.

5.      Defendants knew that they were materially impairing the Schahin Group's ability to remain a going concern.  In essence, they liquidated the company's key assets, took the proceeds, and left the other creditors holding debt of a crippled company that had no prospect of repaying it.

6.      Not only was Defendants' conduct inequitable, but the transaction violated Brazilian law.  When a company proposes to sell an asset that is material to its ongoing viability, Brazilian law provides important protections to the company's creditors:  the Schahin Group was required to obtain the consent of all of its creditors or pay its debts before making the sale.  The Schahin Group did neither, and Defendants knew that the sale violated Brazilian law.  Nonetheless, they proceeded with the transaction because it allowed them to obtain repayment of their loans.

7.      Just a few months later, in April 2015, having been stripped of its critical assets by Defendants, the Schahin Group filed for reorganization in Brazil.  In March 2018, the

Brazilian court converted the reorganization into a bankruptcy.  Today, thousands of Schahin Group creditors remain unpaid – while Defendants' debts were fully satisfied.

8.      The agreement under which Defendants were paid and the original financing agreements all provided that "any legal action or proceeding with respect to" the agreements could proceed in this District.  This Court is thus the proper venue for seeking the return of the money Defendants wrongly obtained, so it can be distributed among all of the Group's creditors consistent with Brazilian law.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b), because this is a civil proceeding related to a case under title 11, *In re Schahin Holding S.A.*, No. 19-19932 (Bankr. S.D. Fla.) (Miami Division) (Chapter 15).[1]

10.     Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the Plaintiff's claims occurred in this District.  Among other things, all of the wire transfers through which the Defendants were unjustly enriched were made from a New York bank account, and all of the wire transfers except one were made to New York bank accounts.

11.     In addition, Defendants consented to venue in this District.  The wire transfers were made pursuant to contracts providing that "any legal action or proceeding with respect to this agreement . . . may be brought in the courts . . . of the United States of America for the Southern District of New York."  Each contract also provided that each party to it "accepts . . .

---

[1] In the event this case is referred to the bankruptcy court, Plaintiff does not consent to entry of final orders or judgment by the bankruptcy court.

generally and unconditionally, the non-exclusive jurisdiction of the aforesaid [Southern District of New York] courts."  Every Defendant was a party to such a contract.

**PARTIES**

12.     Plaintiff AJ Ruiz Consultoria Empresarial S.A. has its principal place of business at Rua Lincoln Albuquerque, No. 259, 13th Floor, Suite 131, São Paulo, Brazil 05004-010.  It appears solely as Judicial Administrator and foreign representative of Schahin Holding S/A; Agropecuária Alto Do Turiassú Ltda; Agropecuária Maranhense S/A; Âmbar Empreendimentos E Participações S/C Ltda; Aquática Comunicações Ltda; Base Engenharia E Serviços De Petróleo E Gás S/A; Base Petróleo E Gas S/A; Companhia Ms De Participações; Companhia Schahin De Ativos; Companhia Schahin Securitizadora De Créditos Financeiros S/S Ltda; Construtora Mogno Ltda; Deep Black Drilling LLP; Foxborough Participações Ltda; Habitécnica Participações S/A; Habitécnica S/A Empreendimentos Imobiliários, Administração E Planejamento; HBF Participações Ltda; HHS Participações S/A; Intelis Automação E Controle Ltda; MTS Participações Ltda; S&S Holding Elétrica S/A; S2 Participações Ltda; Satasch Participações Ltda; SCH 14 Sondas De Produções Marítimas S/A; SCH07 Participações Ltda; SCH08 Participações Ltda; SCH13 Participações Ltda; SCH15 Participações Ltda; Schahin Administração E Informática Ltda; Schahin Ativos Companhia Schahin Securitizadora De Créditos Financeiros S/A; Schahin Capital SPE 1 S/A; Schahin Capital SPE 2 S/A; Schahin Desenvolvimento Imobiliário S/A; Schahin Empreendimentos Imobiliários Ltda; Schahin Energia S/A; Schahin Participações Ltda; Schahin Securitizadora De Créditos Financeiros S/A; and SM Participações S/A.

13.     Defendant Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA S.A.") is a global financial services group organized and existing under the laws of the Kingdom of Spain with its principal place of business in Spain.  In the United States, BBVA S.A. is registered to do

business in California, with its principal place of business and representative office at 201

Mission Street, 24th Floor, San Francisco, California 94105-1853.  BBVA S.A.'s New York

branch is located at 1345 Avenue of the Americas, 44th Floor, New York, New York 10105.

14.     Defendant Banco Bilbao Vizcaya Argentaria, S.A., Grand Cayman Branch, is a

division of BBVA S.A.  In 2014, the operations of Banco Bilbao Vizcaya Argentaria, S.A.,

Grand Cayman Branch, were effectively managed in the United States.

15.     Defendant Caterpillar Financial Services Corporation is a corporation organized

and existing under the laws of the State of Delaware with its principal place of business at 2120

West End Avenue, Nashville, Tennessee 37203.

16.     Defendant Crédit Industriel et Commercial is a company organized and existing

under the laws of the Republic of France with its principal place of business at 6 Avenue de

Provence, 75009 Paris, France.  In the United States, Crédit Industriel et Commercial maintains a

New York branch at 520 Madison Avenue, New York, New York 10022.

17.     Defendant Deutsche Bank AG, London Branch, is a branch of a company

organized and existing under the laws of the Federal Republic of Germany with its principal

place of business at 12 Taunusanlage, Frankfurt am Main, 60325, Germany.  Deutsche Bank AG,

London Branch is located at Winchester House, 1 Great Winchester Street, London EC2N 2DB,

Great Britain.  In the United States, Deutsche Bank AG maintains a New York branch at 60 Wall

Street, New York, New York 10005.

18.     Defendant Deutsche Bank Trust Company Americas is a corporation organized

and existing under the laws of the State of New York with its principal place of business at 60

Wall Street, New York, New York 10005.

19.     Defendant Hamburg Commercial Bank AG, formerly known as HSH Nordbank AG, is a corporation organized and existing under the laws of the Federal Republic of Germany with its principal place of business at Gerhart-Hauptmann-Platz 50, Hamburg, Germany 20095.

20.     Defendant Intesa Sanpaolo, S.p.A., New York Branch, is a branch of a company organized and existing under the laws of the Republic of Italy with its principal place of business at Piazza San Carlo, 156, 10121 Turin, Italy.  The New York branch is located at One William Street, New York, New York 10004.  Intesa Sanpaolo, S.p.A. also maintains a registered office in Washington, D.C. at 1901 Pennsylvania Ave., N.W., Suite 901, Washington, D.C. 20006.

21.     Defendant Itau BBA International plc is a public limited company organized and existing under the laws of the United Kingdom with its principal place of business at The Broadgate Tower, Level 20, 20 Primrose Street, London EC2A 2EW, United Kingdom.

22.     Defendant Mitsubishi Corporation is a corporation organized and existing under the laws of Japan with its registered office at 3-1, Marunouchi 2-Chome, Chiyoda-ku, Tokyo 100-8086, Japan, and its principal place of business for petroleum and chemicals at 6-1, Marunouchi 2-Chome, Chiyoda-ku, Tokyo 100-8086, Japan.

23.     Defendant Mitsubishi UFJ Lease & Finance (U.S.A.) Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 140 East 45th Street, 30B-1, New York, New York 10017.

24.     Defendant Mizuho Bank, Ltd. is a corporation organized and existing under the laws of Japan with its principal place of business at Otemachi Tower, 1-5-5 Otemachi, Chiyoda-ku, Tokyo, Japan 100-8176.  In the United States, Mizuho Bank, Ltd. maintains a New York branch at 1271 Avenue of the Americas, New York, New York 10020.

25.     Defendant MS Drillship I S.A., a wholly owned subsidiary of Defendant Mitsubishi Corporation, was a corporation organized and existing under the laws of the Republic of Panama.  MS Drillship I S.A. was dissolved on September 29, 2014.

26.     Defendant Nomura Corporate Funding Americas, LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at Worldwide Plaza, 309 West 49th Street, New York, New York 10019-7316.

27.     Defendant Shinhan Bank is a company organized and existing under the laws of the Republic of Korea with its principal place of business at 20 Sejong-Daero 9 Gil, Jung-Gu, Seoul 04513, Korea.  In the United States, Shinhan Bank maintains a New York branch at 600 Third Avenue, 17th Floor, New York, New York 10016.

28.     Defendant Standard Chartered Bank is a company organized and existing under the laws of the United Kingdom with its principal place of business at 1 Basinghall Avenue, London, EC2V 5DD, England, United Kingdom.  In the United States, Standard Chartered Bank maintains a New York branch at 1095 Avenue of the Americas, New York, New York 10036.

29.     Defendant UniCredit Bank AG, also known as HypoVereinsbank, is a company organized and existing under the laws of the Federal Republic of Germany with its principal place of business at Arabellastrasse 12, 81925 Munich, Germany.  UniCredit Bank AG maintains a New York branch at 150 East 42nd Street, New York, New York 10017.

## STATEMENT OF FACTS

### *The Schahin Group*

30.     In approximately 1966, brothers Milton and Salim Schahin founded a group of companies in Brazil (the Schahin Group) that they operated as a single unit as an economic matter.  For example, at times the Schahin Group holding companies took out loans that they used to repay operating subsidiaries' debts.  The Schahin Group invested in several industries

over time, but it has focused on oil and gas since approximately 2010.  Several Schahin Group entities are relevant here.

31.     Schahin Holding S/A ("Schahin Holding") is a Brazilian entity, the ultimate owners of which are the Schahin brothers.

32.     Schahin Engenharia S/A ("Schahin Engenharia") (now known as Base Engenharia e Serviços de Petróleo e Gás S.A.) is a Brazilian entity majority-owned by Schahin Holding S/A.

33.     Sea Biscuit International Inc. ("Sea Biscuit") is a British Virgin Islands entity, the ultimate owners of which are the Schahin brothers.  Sea Biscuit is a holding company whose primary activity is the ownership of Black Gold Drilling LLC ("Black Gold").

34.     Black Gold is a Delaware entity wholly owned by Sea Biscuit.  It is a special purpose vehicle whose primary activity is the ownership of Baerfield Drilling LLC ("Baerfield") and Soratu Drilling LLC ("Soratu").

35.     Baerfield is a Delaware entity wholly owned by Black Gold.  It is a special purpose vehicle that owned the *Amazonia*.

36.     Soratu is a Delaware entity wholly owned by Black Gold.  It is a special purpose vehicle that owned the *Pantanal*.

37.     Schahin Engenharia identified Baerfield and Soratu as related parties in its financial statements.  Milton Schahin's son, Fernando Schahin, served as chief financial officer of the Schahin Group, Schahin Holding, Schahin Engenharia, Sea Biscuit, Black Gold, Baerfield, and Soratu.

### *The Schahin Group Finances the Rigs*

38.     In October 2007, Black Gold entered an agreement (the "Credit Agreement") with 14 financial institutions under which the institutions would lend Black Gold $800 million for the construction of two semi-submersible drilling rigs, the *Amazonia* and the *Pantanal*.

39.     The *Amazonia* was owned by Baerfield, and the *Pantanal* by Soratu.  Petróleo Brasileiro S/A ("Petrobras") chartered the *Amazonia* from Baerfield and retained Schahin Engenharia to operate it.  Baerfield and Schahin Engenharia each signed the other's contract with Petrobras, and both companies were jointly and severally liable under both contracts.  Similarly, Petrobras chartered the *Pantanal* from Soratu and retained Schahin Engenharia to operate it. Soratu and Schahin Engenharia each signed the other's contract with Petrobras, and both companies were jointly and severally liable under both contracts.  Milton Schahin signed all four contracts on behalf of Schahin Engenharia, and Milton and Salim Schahin together signed all four contracts on behalf of Baerfield or Soratu, as applicable.

40.     The lenders under the Credit Agreement included Defendants Caterpillar Financial Services Corporation; Hamburg Commercial Bank AG (at the time known as HSH Nordbank AG); Intesa Sanpaolo, S.p.A., New York Branch; Mizuho Bank, Ltd. (at the time known as Mizuho Corporate Bank Ltd.); Standard Chartered Bank; and Unicredit Bank AG (at the time known as Bayerische Hypo-Und Vereinsbank AG).

41.     Defendant Deutsche Bank Trust Company Americas served as Collateral Agent and Loan Paying Agent under the Credit Agreement.

42.     Baerfield, Soratu, and Schahin Engenharia agreed with Defendant Deutsche Bank Trust Company Americas (as Collateral Agent, acting on behalf of the lenders under the Credit

Agreement) that the charter and service agreements for the *Amazonia* and *Pantanal* would serve as collateral for Baerfield's and Soratu's obligations under the Credit Agreement.

43.     In February 2008, Black Gold entered a separate agreement (the "Subordinated Debt Agreement") under which Defendant MS Drillship I S.A. agreed to lend Black Gold $120 million for the construction of the rigs.

44.     Defendant Mitsubishi Corporation's standard practice when acting as a financier was to establish a special purpose vehicle to enter the loan agreement with the borrower. Defendant MS Drillship I S.A. was such an entity.  It was incorporated on December 18, 2007, just two months before the Subordinated Debt Agreement was executed.  The Subordinated Debt Agreement provided that notices under the agreement should be delivered to MS Drillship I S.A. "c/o Mitsubishi Corporation."  Most or all of the officers and directors of MS Drillship I S.A. were Mitsubishi Corporation employees.

45.     Defendant Deutsche Bank Trust Company Americas served as Collateral Agent under the Subordinated Debt Agreement.

46.     Baerfield, Soratu, and Schahin Engenharia agreed with Defendant MS Drillship I S.A. that the charter and service agreements for the *Amazonia* and *Pantanal* would serve as collateral for Baerfield's and Soratu's obligations under the Subordinated Debt Agreement.

47.     Black Gold and its lenders under the Credit Agreement amended and restated that agreement in December 2009 (the "Amended Credit Agreement").

48.     By then there were 18 lenders.  They included Defendants Caterpillar Financial Services Corporation; Hamburg Commercial Bank AG (at the time known as HSH Nordbank AG); Intesa Sanpaolo, S.p.A., New York Branch; Mitsubishi UFJ Lease & Finance (U.S.A.) Inc.;

Mizuho Bank, Ltd. (at the time known as Mizuho Corporate Bank Ltd.); Standard Chartered

Bank; and Unicredit Bank AG (at the time known as Bayerische Hypo-Und Vereinsbank AG).

49.     Defendant Deutsche Bank Trust Company Americas remained the Collateral

Agent and Loan Paying Agent under the Amended Credit Agreement.

50.     Once again, Baerfield, Soratu, and Schahin Engenharia agreed with Defendant

Deutsche Bank Trust Company Americas (as Collateral Agent, acting on behalf of the lenders

under the Credit Agreement) that the charter and service agreements for the *Amazonia* and

*Pantanal* would serve as collateral for Baerfield's and Soratu's obligations under the Amended

Credit Agreement.

51.     In May 2013 Black Gold and Defendant MS Drillship I S.A. amended and

restated their agreement as well (the "Amended Subordinated Debt Agreement").  Defendant

Deutsche Bank Trust Company Americas remained the Collateral Agent.

52.     Baerfield, Soratu, and Schahin Engenharia agreed with Defendant MS Drillship I

S.A. that the charter and service agreements for the *Amazonia* and *Pantanal* would serve as

collateral for Baerfield's and Soratu's obligations under the Amended Subordinated Debt

Agreement.

53.     The Credit Agreement, Amended Credit Agreement, Subordinated Debt

Agreement, and Amended Subordinated Debt Agreement each provided that "any legal action or

proceeding with respect to this agreement . . . may be brought in the courts . . . of the United

States of America for the Southern District of New York."  Each agreement also provided that

each party to it "accepts . . . generally and unconditionally, the non-exclusive jurisdiction of the

aforesaid [Southern District of New York] courts."  Each agreement also provided in all-caps

that "this agreement . . . shall be governed by, and construed in accordance with, the law of the

State of New York excluding choice of law principles of such laws which would require the application of the laws of a jurisdiction other than the State of New York."

### The Schahin Group is Financially Distressed

54.     By mid-2014, Defendants knew or should have known that the Schahin Group was in financial distress and that it had other creditors.

55.     In January 2013, the Singapore shipbuilder that built the *Amazonia* and *Pantanal* (along with a subsidiary) sued Schahin Holding, Schahin Engenharia, Sea Biscuit, Black Gold, Baerfield, and Soratu in a publicly filed complaint in this District for confirmation of a $69.4 million arbitration award.  The arbitration arose out of the Schahin Group entities' failure to repay loans they had obtained from the shipbuilder.

56.     In February 2013, Schahin Oil & Gas Ltd., a Schahin Group entity and the sole owner of Sea Biscuit's sole owner, cancelled a $685 million U.S. bond issue it had planned. Deutsche Bank and Mizuho entities had been involved in the issuance, and the cancellation was reported by the media.

57.     In April 2013, the Administrative Agent for the lenders on the Amended Credit Agreement and Defendant MS Drillship I S.A. appeared in the above-referenced arbitration award confirmation proceedings in this District, arguing that certain Schahin Group assets could not be used to repay the shipbuilder because they were reserved for repayment of the lenders on the Amended Credit Agreement and the Amended Subordinated Debt Agreement.

58.     The Administrative Agent told the Court that the *Amazonia* and *Pantanal* did not generate enough money to make Black Gold's monthly payments under the Amended Credit Agreement, or to pay Schahin Engenharia to operate the rigs.  Black Gold, Baerfield, and Soratu agreed.  In addition, as of April 2013 Defendant MS Drillship I S.A. had not received any payments on its financing of the rigs under the Subordinated Debt Agreement.  Black Gold,

Baerfield, and Soratu also stated that Schahin Engenharia was supposed to pass the payments it received on to the persons and entities providing insurance, goods, and services needed to operate the rigs.

59.     The Court eventually ordered Schahin Engenharia, Schahin Holding, Black Gold, Baerfield, and Soratu to pay the sum that had been awarded in arbitration.  By September 2013, they had paid only approximately $10 million, and the Court held all five entities in contempt. The following month, October 2013, Petrobras paid the balance on the Schahin Group entities' behalf – in effect substituting itself as a creditor.

60.     The Schahin Group's finances did not improve.  In January 2014, Fitch Ratings downgraded its publicly disclosed rating outlook for Schahin Oil & Gas Ltd. from stable to negative, noting the Schahin Group's failure to obtain permanent long-term financing at the holding company level.  In April 2014 Standard & Poor's Ratings Services publicly issued a negative outlook as well.  Black Gold missed its interest payments on the Amended Subordinated Debt Agreement each month from December 2013 through June 2014.

### The Schahin Group Executes the Sale-Leaseback

61.     In September 2014, the Schahin Group paid off Defendants at the expense of the rest of its creditors.  Baerfield and Soratu sold the *Amazonia* and *Pantanal* to subsidiaries of the Industrial and Commercial Bank of China and promptly delivered the sale proceeds to Defendants.  The Industrial and Commercial Bank of China Ltd., New York Branch, leased the rigs back to Baerfield and Soratu, but the bank kept the bulk of the proceeds of the rigs' operation for itself.

62.     To settle the rig financing debts, on September 12, 2014, Black Gold and its lenders under the Amended Credit Agreement entered an agreement (the "Assignment

Agreement") under which the lenders assigned Black Gold's debts to Black Gold's parent, Sea

Biscuit, and Sea Biscuit agreed to pay the outstanding principal on the assigned loans while

Black Gold agreed to pay unpaid interest, approximately $565 million in total.

63.     The Assignment Agreement stated that all of the lenders joining it were parties to

the Amended Credit Agreement.  The lenders joining the Assignment Agreement included

Defendants Banco Bilbao Vizcaya Argentaria, S.A., Grand Cayman Branch; Caterpillar

Financial Services Corporation; Credit Industriel et Commercial; Deutsche Bank AG, London

Branch; Hamburg Commercial Bank AG (at the time known as HSH Nordbank AG); Intesa

Sanpaolo, S.p.A., New York Branch; Itau BBA International plc; Mitsubishi UFJ Lease &

Finance (U.S.A.) Inc.; Mizuho Bank, Ltd.; Nomura Corporate Funding Americas, LLC; Shinhan

Bank; Standard Chartered Bank; and Unicredit Bank AG.

64.     Defendant Deutsche Bank Trust Company Americas acted as the Collateral

Agent, Depositary, and Loan Paying Agent under the Assignment Agreement.

65.     Both the Credit Agreement and the Amended Credit Agreement required Black

Gold to obtain protection against interest rate and exchange rate fluctuations.  The Assignment

Agreement required Black Gold to pay its obligations under the agreements it entered to obtain

this protection.  At the time of the sale-leaseback transaction, Black Gold owed Defendants

Mizuho Bank, Ltd.; Standard Chartered Bank; and Unicredit Bank AG more than $27 million in

total under such agreements.

66.     The Assignment Agreement also required payment of all obligations owed to

Defendant MS Drillship I S.A. under the Amended Subordinated Debt Agreement.

67.     To make the payments required by the Assignment Agreement, Black Gold

directed Defendant Deutsche Bank Trust Company Americas to wire the amounts due under the

Amended Credit Agreement on September 12, 2014, from a New York bank account at Deutsche

Bank Trust Company Americas to accounts for each of the assigning lenders.  All of the

Defendant assigning lenders received their payments at New York bank accounts except for

Defendant Mitsubishi UFJ Lease & Finance (U.S.A.) Inc., which used a Chicago, Illinois bank

account.  Because of the Assignment Agreement, all of the Defendant assigning lenders were

repaid for their loans under the Amended Credit Agreement sooner than they would have been

otherwise.

68.     Consistent with the Assignment Agreement, Black Gold also directed Defendant

Deutsche Bank Trust Company Americas to wire Defendants Mizuho Bank, Ltd.; Standard

Chartered Bank; and Unicredit Bank AG what they were owed under their interest rate and

exchange rate protection agreements.  These transfers too were made from a New York bank

account at Deutsche Bank Trust Company Americas to New York bank accounts in the names of

the relevant Defendants.

69.     Finally, pursuant to the Assignment Agreement, Baerfield and Soratu directed

Defendant Deutsche Bank Trust Company Americas to pay on September 12, 2014, Black

Gold's obligations to Defendant MS Drillship I S.A. under the Amended Subordinated Debt

Agreement, which by then had reached $180.8 million.  Because of the Assignment Agreement,

MS Drillship I S.A. was repaid for its loans under the Amended Subordinated Debt Agreement

sooner than it would have been otherwise.

70.     All of these payments were made using the proceeds of the sale of the *Amazonia*

and *Pantanal*.

71.     Each Defendant that was an assigning lender under the Assignment Agreement received proceeds of the sale, ranging from approximately $7 million to approximately $53 million, depending on the Defendant.

72.     Defendant MS Drillship I S.A., under the Amended Subordinated Debt Agreement, received approximately $181 million in proceeds from the sale.  This sum included a prepayment premium and the cost of dissolving MS Drillship I S.A.  The dissolution took place on September 29, 2014, just weeks after the transaction.  Defendant Mitsubishi Corporation then complied (and complies today) with International Financial Reporting Standards, which required it to issue consolidated financial statements presenting the income of subsidiaries such as MS Drillship I S.A. along with its own as those of a single economic entity.

73.     Defendant Deutsche Bank Trust Company Americas received fees for its services in carrying out the transactions required by the Assignment Agreement.

74.     The Assignment Agreement provided that "any legal action or proceeding with respect to this agreement . . . may be brought in the courts . . . of the United States of America for the Southern District of New York."  It also provided that each party to it "accepts . . . generally and unconditionally, the non-exclusive jurisdiction of the aforesaid [Southern District of New York] courts."  It also provided that "[t]his Agreement shall be construed in accordance with and governed by the law of the State of New York."

### *The Schahin Group Enters Bankruptcy*

75.     The diversion of the sale proceeds and the loss of the revenue from the *Amazonia* and *Pantanal* contributed to the Schahin Group's worsening finances.  On April 17, 2015, a number of Schahin Group entities filed for reorganization in Brazil.  On May 4, 2015, the

Brazilian bankruptcy court ordered that nine Schahin Group entities be reorganized. The nine included Schahin Engenharia and Schahin Holding.

76.     On March 1, 2018, the Brazilian bankruptcy court converted the reorganization into a bankruptcy proceeding as a result of the debtors' failure to comply with and make required payments under the reorganization plan. The court also appointed KPMG Corporate Finance Ltda. ("KPMG"), represented by Osana Mendonça, as judicial administrator.

77.     Under Brazilian law, the judicial administrator acts not solely on behalf of the bankrupt estate, but also on behalf of and for the benefit of its creditors. It does not represent or act on behalf of the company itself or its former management.

78.     On July 26, 2019, KPMG filed a petition in the Southern District of Florida for recognition of a foreign proceeding under Chapter 15 of the Bankruptcy Code. *See In re Schahin Holding S.A.*, No. 1:19-bk-19932 (Bankr. S.D. Fla.) ("*Schahin Holding*").

79.     On August 21, 2019, the United States Bankruptcy Court for the Southern District of Florida granted recognition to the Brazilian proceedings as a foreign main proceeding under 11 U.S.C. § 1517, found that KPMG qualified as a foreign representative under 11 U.S.C. § 101(24), and authorized KPMG to exercise the powers of a trustee under 11 U.S.C. §§ 363 and 552. *See* ECF No. 9, *Schahin Holding*.

80.     On October 21, 2019, the United States Bankruptcy Court for the Southern District of Florida approved an amended petition adding an additional 28 debtors that had been recognized in the Brazilian bankruptcy proceeding. *See* ECF No. 19, *Schahin Holding*.

81.     On September 22, 2020, Mendonça notified the United States Bankruptcy Court for the Southern District of Florida that AJ Ruiz Consultoria Empresarial S.A., represented by

Joice Ruiz Bernier, had replaced KPMG, represented by Mendonça, as judicial administrator for the Brazilian debtors.  *See* ECF No. 59, *Schahin Holding*.

### Sale of Establishment Under Brazilian Law

82.     Brazilian law refers to a business's source of income as its establishment (or premises).  Brazilian bankruptcy law provides that the sale or transfer of an establishment (or premises) is ineffective if made without the express consent or payment of all then-existing creditors, when the debtor is left, after the sale or transfer, with insufficient assets to pay its liabilities.

83.     At the time of the sale-leaseback, the Schahin Group owned five oil rigs:  the *Amazonia*, *Pantanal*, *Lancer*, *Sertão*, and *Cerrado*.  The Group's only other significant source of income was the oil rig *Vitória 10,000*, which the Schahin Group leased from Petrobras.

84.     Under these circumstances, the *Amazonia* and *Pantanal*, individually and together, were an establishment, and the Schahin Group was required to obtain the consent of all of its creditors or pay all of its debts before selling them, if doing so would leave it unable to pay its liabilities.  The Schahin Group did not obtain its creditors' consent or pay its debts before selling the rigs.

85.     After selling the *Amazonia* and *Pantanal*, the Schahin Group did not have sufficient assets to pay its liabilities, as demonstrated by, among other things, its filing for reorganization just a few months after the transaction.

### CLAIM FOR RELIEF

### Unjust Enrichment

86.     The allegations of paragraphs 1 through 85 above are incorporated as though fully set forth herein.

87.     Each Defendant was enriched as a result of the sale of the *Amazonia* and *Pantanal* and the related transactions described above.

88.     Each Defendant that was a lender under the Assignment Agreement received proceeds of the sale, from approximately $7 million to approximately $40.9 million, depending on the Defendant.

89.     Defendant MS Drillship I S.A., as a lender under the Amended Subordinated Debt Agreement and as required by the Assignment Agreement, received approximately $181 million in proceeds from the sale.

90.     Defendants Mizuho Bank, Ltd.; Standard Chartered Bank; and Unicredit Bank AG received money under their interest rate and exchange rate protection agreements.

91.     Defendant Deutsche Bank Trust Company Americas received fees for its services in carrying out the transactions required by the Assignment Agreement.

92.     Each Defendant was enriched at the expense of the Schahin Group's other creditors, on whose behalf and for whose benefit Plaintiff now acts.

93.     If not for the payments to Defendants, the Schahin Group may have been able to avoid bankruptcy and pay its creditors.  Even if the Schahin Group had nonetheless entered bankruptcy, the *Amazonia* and *Pantanal* would have been sold and their value would have been divided among the Schahin Group's creditors according to Brazilian bankruptcy law, rather than being diverted solely to Defendants and the rigs' other financiers.

94.     It is against equity and good conscience to permit Defendants to retain the proceeds of the sale of the *Amazonia* and *Pantanal*.

95.     The Schahin Group's other creditors were entitled to rely on Defendants not to participate in transactions in which they obtained the proceeds of the sale of the company's key

assets, leaving the other creditors with a financially unviable company that declared bankruptcy shortly thereafter.  Defendants knew that Baerfield and Soratu were special purpose vehicles that were part of the Schahin Group and ultimately owned by the Schahin brothers.  This knowledge is demonstrated by, among other things, Defendants' including Schahin Engenharia in the agreements securing Baerfield's and Soratu's debts.  All of the Schahin Group's creditors knew or should have known the obligations and protections established by Brazilian law.  Defendants were aware of the other creditors, and of the Schahin Group's financial distress, as demonstrated by, among other things, Defendants' participation in the 2013 litigation in this District involving the builder of the rigs.  Defendants also knew or should have known about Schahin Oil & Gas Ltd.'s cancelled bond offering and ratings downgrades.

96.    Defendants, as Schahin Group creditors themselves, knew that the creditors were not asked to approve the sale of the *Amazonia* and *Pantanal* and that the Schahin Group had not paid its debts before the sale.  Defendants thus knew or should have known, when they received the sale proceeds, that they were receiving wrongfully obtained property at the expense of the Schahin Group's other creditors.

97.    Plaintiff demands a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

1.  Awarding Plaintiff restitution in an amount to be determined at trial;

2.  Awarding Plaintiff prejudgment interest; and

3.  Such further relief as the Court deems just and equitable.

Dated:  July 13, 2021                         Respectfully submitted,

                                              /s/ *Andrew E. Goldsmith*
                                              Andrew E. Goldsmith
                                              Derek T. Ho
                                              Andrew M. Hetherington
                                              KELLOGG, HANSEN, TODD, FIGEL &
                                                 FREDERICK, P.L.L.C.
                                              1615 M Street, N.W., Suite 400
                                              Washington, D.C. 20036
                                              (202) 326-7900
                                              agoldsmith@kellogghansen.com
                                              dho@kellogghansen.com
                                              ahetherington@kellogghansen.com

                                              *Attorneys for Plaintiff*